IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYNAMIS THERAPEUTICS, INC.,      )
                                  )
            Plaintiff,            )
                                  )
      v.                          )
                                  )      C.A. No. 09-773-GMS
                                  )
ALBERTO-CULVER INTERNATIONAL,     )
INC.,                             )
                                  )
            Defendants.           )
                                  )

## MEMORANDUM

## I.    INTRODUCTION

On October 16, 2009, the plaintiff, Dynamis Therapeutics, Inc. ("Dynamis") filed this

diversity action against the defendant, Alberto-Culver International, Inc. ("Alberto-Culver").  In

its complaint (D.I. 1), Dynamis seeks compensatory and general damages, as well as attorneys'

fees and costs in connection with Alberto-Culver's alleged: breach of contract (Count I), breach

of its fiduciary duty (Count II), and tortious interference with Dynamis' business relationships

(Count III).  (D.I. 1 at 9-16.)  Presently before the court is the defendant's motion to dismiss

pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.  (D.I. 6.)  For the reasons stated below, the court will deny Alberto-

Culver's Rule 12(b)(6) motion with respect to Count I, but grant the motion with respect to

Counts II and III.

## II.   BACKGROUND

Dynamis is a pharmaceutical technology development corporation organized and existing

under the laws of the State of Pennsylvania with its principal place of business located in

Jenkintown, Pennsylvania.  (D.I. 1 at 1; D.I. 7 at 3.)  Alberto-Culver is a corporation organized

and existing under the laws of the State of Delaware with its principal place of business located in Melrose Park, Illinois. (Id.) Alberto-Culver manufactures and sells personal care products, including hair and skin care products, in markets around the world. (D.I. 7 at 9.)

On June 22, 2007, the parties executed a License Agreement (the "Agreement"), wherein Dynamis granted, and Alberto-Culver accepted, a license to use its patented proprietary compounds[1] for the manufacture and commercialization of topical skin-care cosmetics and over-the-counter ("OTC") products. (Id. at 2.) This Agreement was preceded by an Option Agreement (the "Option Agreement") adopted between the parties on September 6, 2006. (Id.) The Option Agreement provided Alberto-Culver with a short-term license to make an assessment of the technology to be licensed, during which Dynamis was precluded from "negotiat[ing] with any other entity regarding . . . a commercial license."[2] (D.I. 9 at 3; D.I. 7 at 4.) Based on its evaluation of Dynamis' patented technology, Alberto-Culver chose to exercise its option to license Dynamis' patents prior to the expiration of the Option Agreement. (D.I. 9 at 3.) The Agreement followed, wherein Dynamis granted Alberto-Culver "an exclusive, royalty-bearing license under the Licensor Patents to develop, make or have made, use, sell, offer for sale, distribute, import, export, register, market and promote Products in the Exclusive Field in the Territory during the Term." (D.I. 1 at 2.)

The present dispute arises out of the Agreement licensing Dynamis' patents to Alberto-Culver for the manufacture and commercialization of topical "anti-wrinkling/moisturizing skin care products." (Id. at 2.) Specifically, on March 31, 2009, Alberto-Culver, in a letter to

---

[1] These compounds include meglumine-HCl and/or a combination of meglumine-HCl and arginine-HCl, and/or methods for the manufacture and commercialization of topical skin-care cosmetic and OTC products. (D.I. 1 at 2.; D.I. 1 at Exhibit A).

[2] Specifically, the Option Agreement granted Alberto-Culver a short-term license "for the purpose of reviewing said patents and patent applications and testing the suitability of the Dynamis Compound for development and production of anti-wrinkling/moisturizing skin cream products to be sold through mass merchandise stores, shopping networks such as QVC and beauty salons." (D.I. 7 at 4; D.I. 1 at 2.)

Dynamis, stated that it had "been unable to develop an economically viable product using the technology" and, therefore, was unilaterally terminating the Agreement and would cease making Quarterly Pre-Launch Regional Payments as required therein.[3]  (D.I. 1 at 6-7.)

## III.   STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), the court looks at the facts most favorable to the non-moving party. *See e.,g., Calloway v. Green Tree Servicing, LLC,* 607 F. Supp. 2d 669, 673 (D. Del. 2009).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).  If they do not, the court should dismiss the complaint. *Id.*  The court is not required to credit unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997).  When the allegations of a complaint are inconsistent with the language of an agreement attached thereto, the language of the agreement controls.  5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1327 (3d ed. 2004) (where disparity exists between a written exhibit incorporated in a complaint and allegations in the complaint, the written exhibit will control).

---

[3] Pursuant to Section 4.3 of the 2007 Agreement, Alberto-Culver was required to, "[c]ommencing on the first day of the next full calendar year (January 1st, April 1st, July 1st or October 1st) after the Effective Date and continuing on the first day of each calendar quarter thereafter until the Launch in the North American Region . . . pay within 14 days to [Dynamis] the amount set forth in the table . . . corresponding to such Region. . . .  Each payment due pursuant to Section 4.3 shall be referred to . . . as a "Quarterly Pre-Launch Regional Payment." (D.I. 1 at 5-6.)  For the North American region, these amounts totaled $100,000 until December 31, 2009 and $250,000 to be paid after January 1, 2010.  (Id. at 6.)  Alberto-Culver indicates in its opening brief in support of its motion to dismiss that, in accordance with these provisions, they paid Dynamis $700,000 in payments through March 31, 2009 when they determined that it was not economically viable to manufacture and produce the topical skin care products central to the Agreement.  (D.I. 7 at 5.)

## IV.   DISCUSSION

### A. The Breach of Contract Claim

Under Delaware law, a breach of contract claim requires: (1) the presence of a contractual obligation, whether expressed or implied; (2) a breach of that obligation by the defendant; and (3) resulting damages to the plaintiff. *See Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 Del. Ch. LEXIS 22, at *43 (Del. Ch. Jan. 27, 2010) (citing *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)). A court interpreting a contract must ascertain the parties' intent from the language of the contract. Where that "language is clear and unambiguous, [the] court [must] accord that language its ordinary meaning." *See Council of Dorset Condo. Apts. v. Gordon*, 801 A.2d 1, 7 (Del. 2002) (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992)). Delaware law recognizes, however, that ambiguous contract provisions are often susceptible to more than one reasonable interpretation. *See VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted). Consequently, a court deciding a motion to dismiss must construe the meaning of a disputed provision in the light most favorable to the non-moving party. *See id.* at 615. Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendant's interpretation is the *only* reasonable construction, as a matter of law, such that there is a "reasonable certainty" that the plaintiff "cannot prevail on any set of facts which might be proven to support the allegations in the complaint." *See id.* (quoting *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)).

Here, Alberto-Culver does not dispute that the agreement constituted a valid contract between itself and Dynamis. Alberto-Culver disagrees with Dynamis, however, as to what performance was guaranteed under that contract, and upon what grounds the contract could be

4

terminated.   With respect to the former, Alberto-Culver contends that Section 6.1 of the Agreement required only that it use "commercially reasonable" efforts in attempting to develop a product utilizing Dynamis' patents and that it satisfied this obligation.   To this end, Alberto-Culver directly challenges Dynamis' argument that its performance required that a product be manufactured and commercialized, and, therefore, asserts that it did not breach a contractual obligation.   Conversely, Dynamis argues that although Section 6.1 obligated the defendant to use commercially reasonable efforts, that section dealt specifically with the "*manner* in which Alberto-Culver is . . . required to perform its obligation."   (D.I. 9 at 9.)   This obligation, according to Dynamis, is set forth in Section 2.1, which states that Alberto-Culver was granted the license to "develop, make or have made, use, sell, offer for sale, distribute, import, export, register, market and promote" its patent technology.   (Id. at 8-9.)   Both parties argue that the Agreement, read as a whole, supports their separate arguments.   (D.I. 7 at 8-11; D.I. 9 at 6-10.)

While it is clear from Section 14.18 of the Agreement that the parties intended the contract to constitute the complete and entire agreement as to each party's obligations, it is not clear whether Section 2.1 or Section 6.1 presents the parties' understanding of those obligations. At this point, the court is not in a position to determine whether Section 6.1 establishes Alberto-Culver's obligations, or whether it simply explains the "manner" in which product development should proceed.   Consequently, Alberto-Culver does not, as is required in a motion to dismiss a breach of contract claim, present the "*only* reasonable construction" of the contract's obligations. Moreover, despite Alberto-Culver's argument that the Section 13 termination provisions are not inclusive of all grounds for contract termination (D.I. 12 at 6-7), the Agreement, on its face, appears to support Dynamis' contention that Alberto-Culver could not legitimately terminate the relationship for failure to develop a product suitable for commercialization (D.I. 1-1 at 22).   For

these reasons, the court will deny Alberto-Culver's motion to dismiss with respect to Count I.

### B. The Breach of Fiduciary Duty Claim

Under Delaware law, a breach of fiduciary duty claim requires the plaintiff to prove by a preponderance of the evidence that: (1) a fiduciary duty exists between the parties; and (2) a fiduciary breached that duty. *Heller v. Kiernan*, C.A. No. 1484-K, 2002 Del. Ch. LEXIS 17, at *9 (Del. Ch. Feb. 27, 2002) (citing *York Linings v. Roach*, C.A. No. 16622-NC, 1999 Del. Ch. LEXIS 160, at *5 (Del. Ch. July 28, 1999)); *Beard Research, Inc. v. Kates*, C.A. No. 1316-VCP, 2010 Del. Ch. 75, at *61 (Del. Ch. Apr. 23, 2010). In ascertaining whether a fiduciary relationship exists, the Court of Chancery of Delaware has been "hesitant to expand the definition of fiduciary relationship," and has tended to find a fiduciary duty only where "a 'special trust in another' or a 'special duty' exists between parties rising to the level that the 'relationship connotes a dependence.'" *Id.* at *10 (quoting *Cheese Shop Int'l, Inc. v. Steele*, 303 A.2d 689, 690 (Del. Ch. 1973), *rev'd on other grounds*, 311 A.2d 870 (Del. 1973)). Moreover, in articulating the parameters of the fiduciary relationship, Delaware law cautions that "attention must be paid to the word 'special' lest the statement be thought to describe too broadly [the Court of Chancery's] concern with relationships where an element of trust, as commonly understood, is present." *Id.* (citing *McMahon v. New Castle Associates*, 532 A.2d 601, 604 (Del. 1987)).

Rather, "[a] fiduciary relation implies a condition of superiority of one of the parties over the other," and a fiduciary duty will be found where a superior-subordinate relationship dynamic is present. *See Cheese Shop Int'l*, 303 A.2d at 690 (citations omitted). An agreement arising from an arms-length transaction, on the other hand, is evidence of a "bargained-for exchange" in which each party receives a benefit and forms a "mutually beneficial commercial and business venture." *N.S.N. International Industries, N.V. and Rank Enterprises, Inc. v. E.I. DuPont de*

*Nemours and Company*, C.A. No. 12902, 1994 Del. Ch. LEXIS 46, at *17, *19-20. In such cases, Delaware law dictates that "a condition of superiority" is not present and, therefore, a fiduciary relationship does not exist amongst the parties. *Id.*

Here, Dynamis contends that Alberto-Culver owed a fiduciary duty to it because of the nature of the parties' relationship as established in the Agreement. (D.I. 9 at 13.) Specifically, Dynamis argues that its complaint provides the factual basis for this claim by identifying "an alignment of interests in terms of both parties' expectation of profits from an exclusive, royalty bearing license." (Id.) Dynamis emphasizes that the exclusive nature of the license granted to Alberto-Culver required it to "pursue," "protect and promote" Dynamis' interests. (Id. at 14.) In support of this contention, Dynamis cites the Delaware Supreme Court's holding in *Corrado Brothers v. Twin City Fire Insurance Co.*, where that court noted that "the concept of a fiduciary relationship . . . is more aptly applied in legal relationships where the interests of the fiduciary and beneficiary incline toward a common goal in which the fiduciary is required to pursue solely the interests of the beneficiary in the property." *Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1192 (Del. 1989).

While Dynamis is correct that "normal business dealings" can take on aspects of a fiduciary relationship, its characterization of the nature of the parties' relationship omits key aspects of that relationship. Here, although the parties maintained a "common interest," the Agreement was reached in an arms-length transaction between sophisticated parties. The Agreement established a commercial relationship in which both parties were to receive the benefit of a bargained-for exchange: Dynamis was to receive contractually stipulated payments prior to product commercialization and royalty payments after, and Alberto-Culver was to receive profits generated from product sales less the royalty payments to Dynamis. This is not a

7

case where the transactions evince a "special trust" between the parties. While fiduciary relationships can be found in some cases involving partnerships or joint ventures, such a relationship is not present in this case. Indeed, the express terms of the Agreement reject such a characterization of the parties' relationship:

> The relationship of the Parties is that of independent contractors, and nothing herein shall be construed as establishing one party or its Affiliates as the partner, agent, legal representative, joint venture, partner, employee, or servant of the other party or its Affiliates. No party shall incur any debts or make any commitments for the other Party or its Affiliates, except to the extent, if at all, specifically provided herein.

(D.I. 1, Ex. 1 at § 14.3.) Thus, Section 14.3 states in unambiguous terms that the parties intended to create a non-fiduciary relationship and the court must give effect to that provision of the contract. *Id.* Consequently, even construing the facts and the provisions of the contract in the light most favorable to Dynamis, Dynamis has not made the requisite showing to state a breach of fiduciary duty claim. The court therefore will grant Alberto-Culver's motion to dismiss with respect to Count II.[4]

## C. The Breach of Tortious Interference Claim

To survive a motion to dismiss under Delaware law, a claim for tortious interference with business relationships must satisfactorily allege: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional, wrongful interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." *Lucent Info. Mgmt. v. Lucent Techs.*, 5 F. Supp. 2d 238, 243 (D. Del. 1998). To satisfy the second element at the motion to dismiss stage, a plaintiff does not

---

[4] Alberto-Culver alternatively contends that Dynamis' breach of fiduciary duty claim is barred under Delaware law by its breach of contract claim, because the allegations supporting the former mirror the breach of contract allegations. In view of the court's reasoning provided above, it is not necessary to consider this alternative argument for dismissal with respect to Count II.

need to identify the prospective business relationship with which the defendant tortiously interfered. *See Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 429-30 (D. Del. 2003). The plaintiff does, however, need to allege wrongful conduct beyond the breach of contract itself in order to satisfy the "intentional, wrongful interference element." *Delaware State Univ. Student Housing Foundation v. Ambling Management Co.*, 556 F. Supp. 2d 367, 377-78 (D. Del. 2008) (citing *Data Management Internationale, Inc. v. Saraga*, C.A. No. 05C-05-108, 2007 Del. Super. LEXIS 412 (Del. Super. July 25, 2007)). Specifically, Delaware law dictates that a plaintiff bringing a claim based on breach of contractual terms "generally must sue in contract . . . not in tort," to "prevent gratuitous 'bootstrapping' of contract claims into tort claims." *Id.* To this end, while the same circumstances may give rise to a breach of contract and tortious interference claim, a plaintiff bringing the latter claim must allege breach of an "independent duty imposed by law," rather than a "duty which arises . . . 'by mere agreement of the parties.'" *Id. See also CPM Industries, Inc. v. ICI Americas, Inc.*, 1990 WL 28574, at *3 (Del. Super. Feb. 27, 1990).

Here, Dynamis alleges that Alberto-Culver "induced" it into entering the Agreement "under the promise [to] fulfill its contractual duties," and tortiously interfered with its business relationships with third parties by its "intentional failure to develop, manufacture, commercialize and launch product(s) utilizing the Dynamis patented compounds and methods." (D.I. 1 at 13.) More specifically, Dynamis asserts that Alberto-Culver "interfered with [its] relationship with former suitors who were otherwise interested in commercializing [the patents] world-wide" by "prohibiting" it from negotiating with other suitors during the Option Agreement, exercising its option "on a less than world-wide basis," and abandoning the contract after it entered a separate third party agreement for commercialization in Asia. (Id.) Combined, Dynamis asserts that this

9

intentional failure "effectively held the Dynamis patents hostage and precluded Dynamis from marketing and licensing to third-parties on a world-wide basis." (Id.)

Dynamis does not allege, however, that Alberto-Culver interfered with its business relations through any separate tortious act. (D.I. 1.) Instead, Dynamis' allegations encompass contractual provisions to which it agreed and which it now seeks to characterize as intentional tortious conduct by Alberto-Culver. Specifically, Dynamis asserts that the Option Agreement precluded it from negotiating with other parties, that the Agreement granted Alberto-Culver a contract excluding Asia, and that this "less than world-wide contract" diminished its ability to enter into other contracts. (Id.; D.I. 9 at 16.) These allegations are merely a repackaging of the allegations it set forth with respect to its breach of contract claim—that Alberto-Culver breached its duty to develop, produce, and commercialize the Dynamis patents. Since there are no other allegations of tortious action by Alberto-Culver, the court will grant Alberto-Culver's motion to dismiss with respect to Count III.

## V.    CONCLUSION

For the foregoing reasons, the court will deny Alberto-Culver's motion to dismiss with respect to Count I, and grant the motion with respect to Counts II and III.

Dated: September **22**, 2010

CHIEF UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYNAMIS THERAPEUTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| ALBERTO-CULVER INTERNATIONAL, | ) |
| INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

C.A. No. 09-773-GMS

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that Alberto-Culver's motion to dismiss (D.I. 6) is DENIED with respect to Count I and GRANTED with respect to Counts II and III.

Dated: September 22, 2010

CHIEF, UNITED STATES DISTRICT COURT